## UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
Thurgood Marshall U.S. Courthouse    40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

### MOTION INFORMATION STATEMENT

Docket Number(s): #13-2216/#13-658

Caption [use short title]

2013 JUN 25 PM 4: 24
U.S. COURT OF APPEALS

Motion for: Appeal from postjudgment motion 59(e)

Set forth below precise, complete statement of relief sought:

Habeas Corpus Relief for violation of

Plaintiff's due process, pursuant to

Morrissey v. Brewer, 408 U.S. 471, 479, 480.

MOVING PARTY: John Santiago

[X] Plaintiff  [ ] Defendant
[ ] Appellant/Petitioner  [ ] Appellee/Respondent

OPPOSING PARTY: David Unger

MOVING ATTORNEY: N/A

OPPOSING ATTORNEY: Attorney General

[name of attorney, with firm, address, phone number and e-mail]

Orleans Correctional Facility

120 Broadway

3531 Gaines Basin Road

New York, N.Y. 10271

Albion, New York 14411-9199

Court-Judge/Agency appealed from: Michael A. Telesca - District Court Judge, WDNY

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
[XX] Yes [ ] No (explain): _____

Opposing counsel's position on motion:
[ ] Unopposed [ ] Opposed [XX] Don't Know
Does opposing counsel intend to file a response:
[ ] Yes [ ] No [XX] Don't Know

Is oral argument on motion requested? [XX] Yes [ ] No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set? [ ] Yes [XX] No If yes, enter date: _____

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:**
Has request for relief been made below? [ ] Yes [ ] No
Has this relief been previously sought in this Court? [ ] Yes [ ] No
Requested return date and explanation of emergency: _____

Signature of Moving Attorney:

_Santiago_ Date: June 19, 2013 Service by: [ ] CM/ECF [XX] Other [Attach proof of service]

## ORDER

IT IS HEREBY ORDERED THAT the motion is GRANTED DENIED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

Date: _____     By: _____

**Form T-1080** (rev. 7-12)

# FINANCIAL AFFIDAVIT
## In Support of a Motion to Proceed In Forma Pauperis

Case Name:        Santiago v. Unger

Docket Number:    13/2216

U.S. COURT OF APPEALS
2013 JUN 25 PM 4: 24

## EMPLOYMENT

Are you now employed?    [XXX] Yes [ ] No [ ] Self Employed
Name & Address of Employer: Orleans Correctional Facility

If YES, how much do you earn per month? $ 20.00

If NO, give month & year of last employment _____

How much did you earn per month? _____

If married, is your spouse employed? [ ] Yes [ ] No
If YES, how much does your spouse earn per month? $_____

If a minor under age 21, what is your parents' or guardian's approximate monthly income?
$_____

## OTHER INCOME

Have you received in the past 12 months any income from a business, profession, or other form of self-employment, or in the form of rent, payments, interest, dividends, retirement or annuity payments, or other sources? [ ] Yes [XX] No
If YES, give the amount received and identify sources:

| Received | Sources: |
|----------|----------|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

## CASH

Have you any cash on hand or money in savings, a prisoner trust fund account or checking account? [ ] Yes [ ] No
If YES, state total amount $_____

rev.11/17/2011

## PROPERTY

Do you own any real estate, stock, bonds, notes, automobiles or other valuable property (excluding ordinary household furnishings and clothing?) ☐ Yes ☒ No
If YES, give value and describe it:

Value                          Description

_____          _____
_____          _____
_____          _____

## DEPENDENTS

Marital status:        Total No. of Dependents: _____

☒ Single

☐ Married

☐ Widowed

☐ Separated or Divorced

List persons you actually support & your relationship

_____
_____
_____
_____

## DEBTS & MONTHLY BILLS

List all creditors, including banks, loan companies, charge accounts, etc.

| Creditors: | Total Debt: | Monthly Payment: |
|---|---|---|
| Apt. or Home: _____ | $_____ | $_____ |
| _____ | $_____ | $_____ |
| _____ | $_____ | $_____ |
| _____ | $_____ | $_____ |

I certify the above to be correct. *J. Santiago*                    June 19, 2013
                              Signature of movant                  Date

**WARNING:** A false or dishonest answer to a question in this affidavit may be punishable by fine, imprisonment, or both.

**Attach this completed Financial Affidavit to a completed**
**T-1080 Motion Information Statement, available on the Court's website.**

UNITED STATES COURT OF APPEAL
FOR THE SECOND CIRCUIT:

JOHN SANTIAGO,#07A1732
Appellant,

-against-

DAVID UNGER, SUPERINTENDENT,
Respondent,

SUPP. APPLICATION FOR LEAVE (COA).

SUPPLEMENTAL APPLICATION FOR
LEAVE TO APPEAL (COA).

Docket No.# 13-2216

1). This supplemental C.O.A. application is with regard to
a denial of a post-judgment motion under the Western District
docket number 12-cv-133(MAT). Although, plaintiff herein does not
attempt to change or take away from any of his contentions in the
original COA application under docket number 13-658. Plaintiff
merely wishes to submit a supplemental application reflecting the
facts of the post-judgment denial and why leave to review this novel
issue should further be granted by this court.

2). On February 14, 2013, appellant moved the Western District
Court, pursuant to rule 59(e) of the FCPR, via a post-judgment
motion to alter or amend the underlying judgment of the denial of
a writ of habeas corpus entered on January 22, 2013 on the ground
that the District Court distorted and overlooked the controlling
authority of Supreme Court precedent, Morrissey v. Brewer, 408 U.S.
471. See annexed hereto as Exhibit "A," Motion for Reconsideration.

3). On May 13, 2013, the District Court denied the Reconsideration
motion on the grounds that; "petitioner argued that the alleged
'improper manner in which his parole was revoked' violated both his

due process and equal protection rights...this court...determined that they were meritless." The District Court went on further and concluded that; "petitioner's due process claim, the court found that, to the extent the claim was based upon and/or derived from perceived violation of state law, the claim was not cognizable on habeas review." See, annexed hereto as **Exhibit "B,"** Reconsideration **motion denial, at pg. 3.**

4). However, the District Court did concede to have misunderstood petitioner's claim in the habeas corpus petition, but faulted petitioner for the misunderstanding due to the alleged confusing manner in which petitioner pled his claim in both the State Courts and in the habeas petition. Consequently, the District Court dismissed the reconsideration motion, in part, by concluding that the "time assessment," "disposition," or "sentence" on the revocation of his parole that he claims to "seek" is a matter that was raised, among others, in his habeas petition and implicated soley matters of state law and/or allegedly improper conduct taken by DOCS and/or the NYS Division of Parole in revoking his parole. See, **Exhibit "B," Recons. Motion den. pg4.**

5) In this regard, although, petitioner's claim was not as artful as the District Court may have liked, the petitioner has continuously, since the initiation of his claim, addressed the two-step due process of the revocation decision as guaranteed under **Morrissey v. Brewer, 408 U.S. 471, 479, 480,** and has never shifted course. In fact, the Attorney General's opposition to the habeas

petition, clearly explained petitioner's contentions and recited
them squarely as petitioner had presented them. In addition,
although, petitioner also continuously addressed state law, Executive
Law 259(3)(d)(iii) and other related state statutes, petitioner was
merely establishing that New York State were in compliance with
the mandates of **Morrissey v. Brewer,** but that the State refuses to
comply with the second-step due process of the revocation decision
as required under **Morrissey.** Nonetheless, the District Court
further conceded that because the claim had been adjudicated on
the merits in the state courts, the court reviewed them under the
AEDPA's deferential standard set forth in 28 U.S.C. 2254(d)(1) and
proceeded to review the Federal Constitutional Due Process claim
under **Morrissey,** and concluded that; "...petitioner's claim that
the state's failure to comply with the two-step process set forth
in **Morrissey** violates his federal due process rights, said claim
is also meritless and provide no basis for habeas relief. In
**Morrissey v. Brewer, 408 U.S. at 482,** the Supreme Court held that
the requirements of due process apply to the revocation of parole.
The court established two criteria with regard to the process that
is due. First, there must be a preliminary hearing to determine
whether there is probable cause or reasonable grounds to believe
that the arrested parolee has committed acts that would constitute
a violation of parole conditions. Second, there must be a revocation
hearing if desired by the parolee, that lead[s] to a final
evaluation of any contested relevant facts and consideration of

(3)

whether the facts as determined warrant revocation. The parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation." See, Exhibit "C," Underlying Judgment of Habeas denial, pg.21.

6). Apparently, the District Court Judge acknowledged that petitioner claimed that he was entitled to habeas relief on the basis of a "Constitutional and Statutory due process violation." See, Exhibit "C," (original denial of habeas petition, pg. 20). Subsequently, the District Court dismissed the statutory due process claim as not cognizable on habeas review because it derived from state law. Nevertheless, thereafter, the District Court went on to address the Federal due process under Morrissey. The only reason why the District Court dismissed that claim as meritless was because the District Court had misplaced the two-step due process "within" the final revocation decision, Morrissey at 479, 480, with the two-step due process criteria of the "preliminary hearing" and the "final revocation hearing." Morrissey at 485, 488. See, Exhibit "C," underlying denial of writ, pg 20, 21, and Exhibit "B," recons. den. pg. 4, (conceding to having misplaced petitioner's federal due process claim).

7). Under this content, the District Court concluded that; "...petitioner was therefore not entitled to a final revocation hearing, his claim that his parole was not properly revoked because

he never had such a final hearing is necessarily without merit."
This was the basis of petitioner's reconsideration motion, which
petitioner claimed the District Court had distorted, and requested
that the court reconsider its prior judgment and address the "second
step" due process "within" the final revocation decision as set
forth in Morrissey. See, Exhibit "A," recons. mot. pg. 3, para 9,
pg. 6, para 17. However, in light of the District Court's acknowledgment
to "misunderstanding" and/or distorting petitioner's due process
claim under Morrissey, it avoided addressing the merits of the federal
due process of the underlying petition as well as the merits of the
reconsideration motion, by contending that petitioner's claim is
derived from state law only and therefore, not cognizable on habeas
review.

8). Under these circumstances, the District Court not only
admitted to distorting and misplacing petitioner's contention of
the two-step due process "within" the final revocation decision.
It has also overlooked controlling law as set by Supreme Court
precedent under Morrissey. In addition, it failed to address
petitioner's claim, nor did it present any authority as to how or
why the second step of the two-step due process under Morrissey
can be dispensed of, with out offending petitioner's due process
to the dispositional phase, and other related constitutional rights
attached to petitioner upon entering his 2007 negotiated plea,
which is the overlapping related subject in the matter of Santiago v.
LaClaire, under doc. #12-1245pr, which is currently held in abeyance
pending this COA application.

(5)

WHEREFORE, for the reasons stated in petitioner's original COA application and the reasons stated herein, this Court should grant petitioner leave to appeal to this Court by granting the COA application and consolidating the underlying judgment of the reconsideration motion and subsequently, consolidate petitioner's Ineffective Assistance of Counsel claim held in abeyance awaiting the out come of this COA application, and for what ever other reasons this Court may deem just and proper.

Respectfully Submitted,

John Santiago, #07A1732
Orleans Correctional Facility
3531 Gaines Basin Road
Albion, New York 14411-9199

# EXHIBIT - A

John Santiago, 07A1732
Orleans Correctional Facility
3531 Gaines Basin Road
------------------ Albion, New York 14411-9199 ------------------

February 14, 2013

Chambers Of
Honorable Michael A. Telesca
272 United States Courthouse
100 State Street
Rochester, New York 14614

Re: 12 -cv- 00133 (MAT)

Dear Hon. Telesca:

Enclosed, please find a motion for reconsideration pursuant to the Federal Rules of Civil Procedure, rule 59(e), to alter and/or amend a prior judgment entered by this Court on January 22, 2013. I am of the opinion that the Court has misplaced my contentions as presented in the writ for habeas corpus, and as such, I respectfully ask that you reconsider your prior judgment based on the information in the accompanying motion.

I would like to thank you in advance for your time and consideration on this matter.

Sincerely,

John Santiago, #07A1732

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
In the Matter of the Application of

JOHN SANTIAGO,
Petitioner,

                               **MOTION TO ALTER OR AMEND
JUDGMENT, PURSUANT TO
FED. RULES CIV. PROC.**
-agaist-                             **59(e), 28 U.S.C.A.**

DAVID UNGER, SUPERINTENDENT,
Respondent,                                **No.# 12 -cv- 00133 (MAT)**

## RECONSIDERATION OF DECISION AND ORDER:

1). Petitioner moves for reconsideration pursuant to the
Federal Rules of Civil Procedure, Rule 59(e) to alter or amend a
prior Decision and Order entered on January 22, 2013, denying
petitioner's writ for habeas corpus relief.

2). The motion for reconsideration pursuant to 59(e) is
" a motion to alter or amend a judgment and must be filed no later
than 28 days after the entry of the judgment." Subsequently, the
instant application has been instituted within the statutory time
frame and thereby making the motion a timely one.

3). A motion to alter or amend a judgment may be granted to
a party for one of the following reasons:

        **a).** Accommodate an intervening change in law
        **b).** Account for new evidence not available at trial
        **c).** Correct clear error of law, or
        **d).** Prevent manifest injustice.

**4).** Nonetheless, a motion to alter or amend a judgment does not permit a losing party to present facts that could have been raised earlier. It should not be used to relitigate old matters, raise new arguments, or present evidence that could have been raised prior to the entry of judgment.

**5).** Here, petitioner is not attempting to relitigate old matters or raise new arguments. Petitioner, instead premise the instant motion on the ground that the Court has clearly misunderstood the principles set forth in **Morrissey v. Brewer, 408 U.S. 471.**

**6).** As petitioner would illustrate, this Court has rendered a clear error of law as set under Supreme Court precedent, and as such, the risk of a manifest injustice warrants this Court to alter or amend its prior decision and order and thereby, sparing the parties and Appellate Courts the burden of review.

## CLEAR ERROR OF LAW - MANIFEST INJUSTICE:

**7).** Petitioner's claim presented a due process violation pursuant to Federally established law as set by Supreme Court precedent, **Morrisssey v. Brewer,** supra. In that regard, petitioner contended that under **Morrissey,** a "two-step" due process **"exist within"** the final revocation hearing. See, Division of Parole, policy and procedure manual #9212.00 pg. 9 of 13, annexed hereto as **Exhibit A.**

**8).** Unfortunately, this Court misplaced petitioner's claim and concluded that the "two-step" due process consisted of a "Preliminary hearing" and a "Final Revocation hearing," and rationalized that petitioner's parole was not improperly revoked because he did not have a parole final revocation hearing. See, **Decision and Order, pg. 21, 24.**

**9).** As a result, this Court has distorted petitioner's claim and has failed to address petitioner's due process claim of the **"second-step"** (dispositional phase, time assessment or penalty) **"within"** the final revocation hearing and how the dispensation of this "sentencing stage" does not violate his due process right in light of **Morrissey v. Brewer.**

**10).** It is clear that in every litigation whether criminal, civil or administrative, a "two-step" due process is required, that is, a "Fact Finding and Disposition," a "Judgment and Sentence." Why is it, under the current circumstances the Court refuses to address this important stage of petitioner's deprivation of liberty. Petitioner is required by law to have a reasonable expectation of finality with respect to a penalty for his parole violation. See, **Matter of Beattie v. N.Y.S. Bd. of Parole, 39 N.Y.2d 445, 447 (1976).**

**11).** Nor, was petitioner's argument whether he's entitled to the "first-step" (fact finding) of the final revocation hearing to determine whether he violated the conditions of his parole or not, as the Court has assessed. See, **Decision and Order, pg. 22, 23.** Petitioner's claim is that the violation of parole has been established by means of the 2007 conviction. Therefore, satisfying the "fist-step"

of the "two-step" due process within the final revocation hearing. See, Executive Law 259-i (3)(d)(iii). However, the "second-step" is left unresolved, nor is there any authority addressing how the dispensation of the "second-step" within the final revocation hearing survive constitutional scrutiny.

12). In the cases cited by the Court, those cases dealt with parolee's arguing that their parole had been revoked without the "first-step" (fact finding) of the final revocation hearing. Under those circumstances, petitioner agrees that a final revocation hearing with respect to the "fact finding stage" is unnecessary as the new conviction established that the parolee violated the conditions of his/her parole and therefore, the revocation of parole is appropriate without a hearing. That is, no fact finding is required to determine whether the parolee violated the conditions of his parole. See, **Maggio v. Casscles, 28 N.Y.2d 415, 418 (1971).** See also, **Decision and Order pg. 23.** However, as previously emphasized on, petitioner does not contest the "fact finding stage" of the final revocation hearing. Petitioner only claims that the "second-step" of the final revocation hearing is constitutionally warranted in order to adjudicate petitioner on the 8 years, 2 months and 20 days owed on the undischarged term. See, **Beattie v. N.Y.S. Bd. of Parole, 39 N.Y.2d 445, 447.**

13). In **Morrissey,** the Supreme Court, ruled that, "...[t]he first-step in a revocation decision (not a preliminary hearing) thus involves a wholly retrospective factual question: **whether the parolee**

has in fact acted in violation of one or more conditions of his parole. Only if it is determine that the parolee did violate the conditions does the second question arise: should the parolee be recommitted to prison or should other steps be taken to protect society and improve chances of rehabilitation? See, U.S. Carson v. Taylor, 403 F. Supp. 747, 751 (S.D.N.Y. 1975); Rastelli v. Warden, Metro. Corr. Center, 610 F. Supp. 961, 978 (S.D.N.Y. 1985) (" The finding of violation...is only a first step. The second, and more crucial determination is whether the violation warrant returning the parolee to prison. Due process must attend both stages of the inquiry." Citing Morrissey v. Brewer, Id. at 479, 480. Enclosed as Exhibits B, C, and D, for the Court's convenience as highlighted.

14). In Mayfield v. Evans, 93 A.D.3d 98, 938 N.Y.S.2d 290 (N.Y.A.D. 1 Dept. 2012), the Court, there, concluded that "...[U]nder MOrrissey, due process attaches not only to the proof of violation stage of the revocation proceeding, but also to the time assessment stage...Lastly, the Morrissey Court not only considered time assessment to be the 'second step' of the two-part process, it considered it the more complex step (408 U.S. at 479-480). It is difficult, in light of the aforementioned language in Morrissey, about due process (id. at 488-489) to conclude that the more complex step does not require due process while the simpler step does." Mayfield, at 298-299. See annexed hereto as Exhibit E, as highlighted.

15). Under these circumstances, it is difficult for petitioner to ingest the Court's decision and order entered on January 22, 2013 denying his writ. The Court completely distorted petitioner's claim by clearly misinterpreting the "two-step" due process that petitioner presented.

16). Petitioner is not attempting to relitigate whether he violated his parole or not after his 2007 conviction, nor is petitioner attempting to present "mitigating circumstances" that would show that revocation of parole is not warranted. Petitioner merely seeks a "time assessment," "a disposition," or a "sentence," on the revocation of his parole. Petitioner owes 8 years, 2 months and 20 days on parole, however, petitioner has not been adjudicated on the 8 years, 2 months and 20 days. The second step within the final revocation hearing under **Morrissey v. Brewer**, is the proper forum to determine how much time, if any, is to be served under the undischarged term.

17). Therefore, this Court should re-evaluate its determination based on the **"two-step"** due process **"within"** the final revocation hearing and should explain why the dispensation of the second step (dispositional phase) within the final revocation hearing does not offend petitioner's due process entitlement to receive a **"time assessment"** under the mandate of **Morrissey v. Brewer**.

18). May the Court keep in mind, and the author herein emphasize, that petitioner concedes that the "first-step" within the final revocation hearing is unnecessary because the 2007

(6)

conviction has established that petitioner has violated the
conditions of parole and therefore, the first-step of the final
revocation hearing is not required to determine whether he
violated. Petitioner only seeks an **"associated sentence"** for his
violation. In other words, petitioner has not received a "collateral
consequence" for his parole violation. As such, on what grounds
does the State of New York continue to deprive petitioner of his
liberty if no "associated sentence" for the violation has not been
imposed?

　　　　**WHEREFORE,** the Court should alter and/or amend its prior
judgment on the basis that the Court did not address the contents
of the writ, by distorting the "two-step" due process within the
final revocation hearing (fact finding and disposition), with the
two-step criteria of a "preliminary hearing and a final revocation
hearing," and for any other reasons the may deem just and proper
under the circumstances.

Date: February, 2013

John Santiago, #07A1732
Orleans Correctional Facility
3531 Gaines Basin Road
Albion, New York 14411-9199

(7)

# EXHIBIT - B

## Orders on Motions
1:12-cv-00133-MAT Santiago v. Unger
## CASE CLOSED on 01/23/2013

APPEAL,HABEAS,CLOSED_2013,ProSe

## U.S. DISTRICT COURT

## U.S. District Court, Western District of New York

## Notice of Electronic Filing

The following transaction was entered on 5/13/2013 at 1:21 PM EDT and filed on 5/13/2013
**Case Name:**      Santiago v. Unger
**Case Number:**      1:12-cv-00133-MAT
**Filer:**
**WARNING: CASE CLOSED on 01/23/2013**
**Document Number:**   22

**Docket Text:**
**ORDER denying [21] Motion to Alter Judgment. Signed by Hon. Michael A. Telesca on 5/13/13. (JMC)**

**1:12-cv-00133-MAT Notice has been electronically mailed to:**

Paul B. Lyons   paul.lyons@ag.ny.gov

**1:12-cv-00133-MAT Notice has been delivered by other means to:**

John Santiago
07A1732
WYOMING CORRECTIONAL FACILITY
Box 501
Attica, NY 14011-0501

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1042579058 [Date=5/13/2013] [FileNumber=2448135-0
] [c86cbfa6df8b96c3e050a9d0d2158922a071ed013d2519f5f4f5bf0600b506eb668
dd0fe4e2ad3a7199d3a9c1633c342aef9495054505121d50954f5a45225c2]]

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOHN SANTIAGO,

                    Petitioner,

-vs-

DAVID UNGER,
SUPERINTENDENT

                    Respondent.

**DECISION AND ORDER**
**No. 12-CV-00133MAT**

## I.   Introduction

*Pro se* Petitioner John Santiago ("Petitioner" or "Santiago")
timely[1] filed this Motion to Alter or Amend an Order and Judgment,
pursuant to Fed. R. Civ. P. 59(e) ("Rule 59(e)"), to reconsider
this Court's January 22, 2013 Decision and Order (Dkt. No. 17)
denying him habeas relief and dismissing his habeas corpus
petition.

For the reasons that follow, this Court denies Petitioner's
motion pursuant to Rule 59(e) since Petitioner has failed to
establish that the Court overlooked controlling decisions or

---

[1]

Rule 59(e) provides that "[a] motion to alter or amend a judgment must be
filed no later than 28 days after the entry of the judgment." Pursuant to the
prisoner mailbox rule, a *pro se* filing is deemed filed on the date it is
delivered to prison officials for mailing. Noble v. Kelly, 246 F.3d 93, 97 (2d
Cir. 2001). Petitioner's motion is dated February 14, 2013, and the envelope
mailed to this Court enclosing said motion bears a date stamp of February 15,
2013. Judgment in Petitioner's habeas case was entered on January 23, 2013 (Dkt.
No. 18), and thus Petitioner had 28 days therefrom, or until February 21, 2013,
to file the instant motion challenging the Court's denial of his habeas petition.
The instant motion, which was deemed filed on or about February 14, 2013, is
therefore timely.

factual matters justifying the Court to alter or amend its decision.

## II. Discussion

### (A) Rule 59(e) of the Federal Rules of Civil Procedure

"A motion for reconsideration is appropriate when the moving party can demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion . . . and which, had they been considered, might have reasonably altered the result before the court."  See Herschaft v. New York City Campaign Finance Bd., 139 F.Supp.2d 282, 284 (E.D.N.Y. 2001); Hester Indus., Inc. v. Tyson Foods, Inc., 985 F.Supp. 83 (N.D.N.Y. 1997). Motions to Alter or Amend pursuant to Rule 59(e) "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked . . . that might reasonably be expected to alter the conclusion reached by the court." See Shrader v. CSX Transp. Inc., 70 F.3d 255, 257 (2d Cir. 1995). District courts apply this rule strictly to dissuade repetitive arguments on issues that have already been fully considered by the Court. See Commercial Union Ins. Co. Blue Water Yacht Club Ass'n., 289 F.Supp.2d 337, 340 (E.D.N.Y. 2003). A motion to reconsider should not be granted where a moving party seeks solely to relitigate an issue already decided. See Shrader, 70 F.3d at 257.

Whether to grant a Rule 59(e) motion is committed to the sound

discretion of the district judge and will not be overturned absent an abuse of discretion. See Devlin v. Transp. Communications Int'l. Union, 175 F.3d 121, 132 (2d Cir. 1999); McCarthy v. Manson, 714 F.2d 234, 237 (2d Cir. 1983).

**(B)  Petitioner's Arguments in Support of Reconsideration**

In his habeas petition, Petitioner argued that the allegedly improper manner in which his parole was revoked violated both his due process and equal protection rights. See Pet., Attach. at 3-7 (Dkt No. 1); see also Pet's Reply (Dkt. No. 11). Because these claims had been adjudicated on the merits in the state courts, this Court reviewed them under AEDPA's deferential standard set forth in 28 U.S.C. § 2254(d)(1), and determined that they were meritless. See Dkt. No. 17 at 20-27.

With respect to Petitioner's due process claim, the Court found that, to the extent the claim was based upon and/or derived from perceived violations of state law, the claim was not cognizable on habeas review. See Dkt. No. 17 at 20. Insofar as Petitioner appeared to be also framing the claim as a federal due process violation, the Court liberally construed his *pro se* pleadings and reviewed the claim as such, under Morrissey v. Brewer, 408 U.S. 471 (1972). Id. at 21-24.

Petitioner now seeks reconsideration of the Court's habeas decision, claiming that "this Court has rendered a clear error of law" with respect to his due process claim. Pet's Motion at ¶ 6.

In the instant motion, Petitioner does not point to an intervening change of law, nor has he offered previously unavailable evidence or identified controlling law that the Court overlooked. Rather, he "premise[s] the instant motion on the ground that the Court clearly misunderstood the principles set forth in [Morrissey]." Id. at ¶ 5. Specifically, he claims that the Court "misplaced" and "distorted" his due process claim, incorrectly framing it as an allegation that he was deprived of a final revocation hearing under the second-step of the two-step process set forth in Morrissey. Id. at ¶¶ 8, 9. He maintains that he "merely seeks a 'time assessment,' 'a disposition,' or a 'sentence,' on the revocation of his parole." Pet's Motion at ¶ 16.

Even if the Court misunderstood Petitioner's argument -- which it appears to have done, owing, to some extent, to the rather confusing manner in which Petitioner pled this claim in both the state courts and in the habeas petition -- such mistake is not sufficient to warrant reconsideration of the Court's decision denying Petitioner habeas relief on his due process claim. This is so because the "time assessment," "disposition," or "sentence" on the revocation of his parole that Petitioner claims he "seeks" is a matter that was raised, among others, in his habeas petition and implicated solely matters of State law and/or allegedly improper conduct taken by DOCS and/or the NYS Division of Parole in revoking his parole. See Dkt. Nos. 1, 11. The Court therefore determined

-4-

in its habeas decision that, to the extent Petitioner's "due process" claim was based upon or derived from perceived violations of state law (which it in fact appears to have been), that claim was not cognizable on habeas review. See Dkt. No. 17 at 20.

It is clearly established law that the standard for granting a motion for reconsideration under Rule 59(e) is "strict in order to dissuade repetitive arguments on issues that have already been considered fully by the Court." Ruiz v. Commissioner of the Dept. of Transp. of the City of N.Y., 687 F. Supp. 888, 890 (S.D.N.Y.), aff'd, 858 F.2d 898 (2d Cir. 1988). Dismissal of Petitioner's motion is therefore warranted because it repeats "due process" arguments that already have been fully considered by this Court. Shrader, 70 F.3d at 257.

## III. Conclusion

For the reasons stated above, Petitioner's motion pursuant to Rule 59(e)(Dkt. No. 21) is denied. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     May 13, 2013
           Rochester, New York

# EXHIBIT - C

## Other Orders/Judgments
<u>1:12-cv-00133-MAT Santiago v.</u>
<u>Unger</u>

HABEAS,ProSe

### U.S. DISTRICT COURT

### U.S. District Court, Western District of New York

### Notice of Electronic Filing

The following transaction was entered on 1/22/2013 at 10:57 AM EST and filed on 1/22/2013
**Case Name:**      Santiago v. Unger
**Case Number:**      <u>1:12-cv-00133-MAT</u>
**Filer:**
**Document Number:** <u>17</u>

**Docket Text:**
**-CLERK TO FOLLOW UP- DECISION AND ORDER denying the petition for a writ of habeas
corpus and dismissing the petition. (Clerk to close case.) Signed by Hon. Michael A.
Telesca on 1/22/13. (JMC)**

**1:12-cv-00133-MAT Notice has been electronically mailed to:**

Paul B. Lyons paul.lyons@ag.ny.gov

**1:12-cv-00133-MAT Notice has been delivered by other means to:**

John Santiago
07A1732
WYOMING CORRECTIONAL FACILITY
Box 501
Attica, NY 14011-0501

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1042579058 [Date=1/22/2013] [FileNumber=2362289-0
] [8c3ffebcf0e7ac08de2cdef5698c396a2cc18413d3530e6ee80ead489859572630b
0556dde0968412c92daa473bec85a5b98fdc1ceac1ad98c7476e071467d92]]

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOHN SANTIAGO,

                    Petitioner,

    -vs-

DAVID UNGER,
SUPERINTENDENT

                    Respondent.

**DECISION AND ORDER**
**No. 12-CV-00133MAT**

---

## I.    Introduction

*Pro se* Petitioner John Santiago ("Petitioner") has filed a
petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254
challenging the constitutionality of certain administrative
decisions made by the New York State Division of Parole with
respect to the revocation of his parole.

## II.  Factual Background and Procedural History

### A.    Petitioner's State Court Convictions and Sentencing

On March 18, 1992, Petitioner was sentenced in Bronx County
Supreme Court to an aggregate indeterminate sentence of 8 to
24 years upon his convictions for first-degree manslaughter,
second-degree criminal possession of a weapon, and second-degree
assault.  See Pet., Attach.[1] at p 1;  Resp't Ex. A at p 14;[2] Resp't

---

[1]

In between pages 5 and 6 of the pre-printed form habeas petition,
Petitioner inserts a seven page typed document entitled "Statement of Facts,
Procedural History & Grounds One and Two."  This document is separately paginated
with the numbers 1-7.  To avoid confusing the page numbers of the form habeas
petition with those of the attached document, the Court hereinafter refers to the
document entitled "Statement of Facts, Procedural History & Grounds One and Two"

Ex. E at Aff. ¶ 5. He was released from New York State Department of Correctional Services ("DOCS")[3] custody to parole supervision on September 6, 2000, having served over eight years, the minimum term of his indeterminate sentence. See Resp't Ex. A at p 14.

On July 8, 2006, while still on parole, Petitioner was arrested in connection with new criminal charges. See Resp't Ex. A at p 14; Resp't Ex. E at Ex. A. In February 2007, he pleaded guilty in Rockland County Court to second-degree attempted criminal possession of a forged instrument, a felony, and on March 22, 2007, he was sentenced, as a second felony offender, to an indeterminate term of 1 ½ to 3 years imprisonment. See Pet., Attach. at 1; Resp't Ex. A at p 14; Resp't Ex. E at Aff. ¶¶ 3-4. The Rockland County Court directed that Petitioner's 2007 sentence be served "consecutive to any undischarged determinate or indeterminate sentence." See Resp't Ex. A at p 14; Resp't Ex. E at Ex. H (Sentencing Mins. at p 4). Petitioner's parole was automatically revoked by operation of law as a result of his 2007 conviction. See Resp't Ex. E at Aff. ¶ 5; see also New York Executive Law ("Executive Law") § 259-i(3)(d)(iii).

---

as the "attachment" to the habeas petition.

[2]

The Court refers to the CM/ECF pagination for this Exhibit, as it is comprised of numerous numbered and unnumbered documents.

[3]

DOCS and the New York State Division of Parole have since been merged to form the Department of Corrections and Community Services.

Petitioner was received back into DOCS custody on March 29, 2007, and was certified as entitled to 264 days of jail time credit. See Pet., Attach. at 1; Resp't Ex. E at Ex. A. At the time Petitioner was received back into custody, DOCS determined that Petitioner still owed 8 years, 2 months, and 20 days against the undischarged maximum term of his 1992 indeterminate sentence. That undischarged term was aggregated with the maximum term of Petitioner's 2007 indeterminate sentence pursuant to Penal Law § 70.30(1)(b). See Resp't Ex. A at p 14. Accordingly, on or about April 9, 2007, DOCS calculated Petitioner's parole eligibility, conditional release, and maximum expiration dated with respect to his multiple sentences as January 4, 2008, December 27, 2013, and September 24, 2017, respectively. See Resp't Ex. A at p 14 and attached Ex. B (DOCS Legal Date Computations). On June 1, 2007, the Division of Parole issued a Notice of Final Declaration of Delinquency stating that Petitioner had been found delinquent on his conditions of parole as of July 8, 2006 (in connection with his arrest and conviction for a felony while on parole) and that his maximum expiration date had been extended, pursuant to Executive Law § 259-i(3)(d)(iii), based on the undischarged indeterminate sentence from his prior conviction. See Resp't Ex. A at attached Ex. J (Notice of Final Declaration of Delinquency by Board of Parole).

-3-

On October 31, 2007, Petitioner appeared before the Parole Board in anticipation of his January 4, 2008 parole eligibility date. At the conclusion of the hearing, parole was denied and Petitioner was directed to be held for an additional 24 months, with his next Parole Board appearance scheduled for November 2009. See Pet., Attach. at 1; Resp't Ex. A at p 14-15 and attached Exs. C (Parole Board decision), K (transcript of 10/31/07 parole board hearing).

Petitioner then filed an administrative appeal with the Division of Parole Appeals Unit (hereinafter "Appeals Unit"). See Resp't Ex. A at p 15 and attached Ex. D (Letter from Appeals Unit); Resp't Ex. E at Ex. G. In a letter to Petitioner dated November 13, 2007, the Appeals Unit acknowledged that it had received Petitioner's notice of appeal on that date and that the latest date for submitting documentation for perfecting his appeal was March 13, 2008. See Resp't Ex. A at Ex. D (Letter from Appeals Unit). On appeal,[4] Petitioner did not challenge "the parole denial itself," but rather sought modification of the "excessive" 24-month hold imposed by the Parole Board. See Resp't Ex. E at Ex. G, ¶ 1. The Appeals Unit failed to issue a determination on Petitioner's appeal. See Pet., Attach. at 1-2; Resp't Ex. A at p 15 and attached Ex. F.

---

4

The cover page of Petitioner's appeal is date-stamped by the Appeals Unit, indicating that it was "[r]eceived March 13, 2008." See Resp't Ex. E at Ex. D (cover page).

## B. The Article 78 Proceeding

Petitioner subsequently filed in Franklin County Supreme Court a *pro se* petition dated December 23, 2008, pursuant to Article 78 of the New York Civil Practice Law and Rules ("CPLR"), challenging "the decision by the division of parole at [his] parole eligibility hearing on October 31, 2007 which denied parole[] and scheduled a re-appearance parole eligibility date for Nov. 2009." See Resp't Ex. A at p 9, ¶ 3.

In the Article 78 petition, Petitioner argued that the approximately 8-year undischarged maximum term from his 1992 indeterminate sentence was entirely separate from his 2007 sentence of 1 ½ to 3 years, such that he would "not commence the un-discharged [8-year] term [from the 1992 sentence] until he complete[d] the 3 year maximum on the new [2007] sentence." See Resp't Ex. A at p 19-20. Petitioner argued that, although the Parole Board properly calculated his January 4, 2008 parole eligibility date based on the 1 ½ year minimum term under his 2007 sentence, the Board improperly scheduled his next Parole Board hearing for November of 2009, even though that was approximately six months after his 2007 sentence had already expired on July 4, 2009. See Resp't Ex. A at p 20. Petitioner argued further that when he completed the maximum term of his 2007 sentence on July 4, 2009, the Division of Parole should hold a final revocation hearing

under Executive Law § 259-i(3)(f)(x) with respect to the 8-year undischarged term of his 1992 sentence, at which hearing he would be given a "delinquent time assessment." See Resp't Ex. A at p 20-21.

Petitioner also claimed that his equal protection rights were violated because of the different parole revocation procedures afforded a parolee convicted of a new felony, depending on whether the new conviction was in New York or in another state. See Resp't Ex. A at p 21-25.

Respondent, the Division of Parole, moved to dismiss the petition on the ground that Petitioner had failed to exhaust his administrative remedies. See Resp't Ex. B. On June 23, 2009, the Franklin County Supreme Court denied Respondent's motion, finding that the issues raised in Petitioner's Article 78 proceeding "were not cognizable in the context of an administrative appeal from a parole denial determination." Resp't Ex. D. The Division of Parole then filed its answer to the petition, and Petitioner filed a Reply. See Resp't Exs. E, F. On November 4, 2009, the county court directed the Division of Parole to address Petitioner's equal protection claim. See Resp't Ex. G. The Division of Parole filed an affirmation in response, and also asserted that all of Petitioner's claims were moot in light of Petitioner's second

-6-

appearance before the Parole Board in 2009.[5]   By Order dated
February 24, 2010, the Franklin County Supreme Court dismissed the
Article 78 proceeding.   See Resp't Ex. J.   Petitioner moved for
reargument, which was denied on July 22, 2010.   See Resp't
Exs. K, M.

## C.   **Appeal of the Article 78 Petition**

Petitioner filed a *pro se* appeal with the Appellate Division,
Third Department, asserting the same two claims that he raised in
his Article 78 petition.   See Resp't Ex. N.   On January 27, 2011,
the Appellate Division unanimously affirmed the judgment dismissing
Petitioner's Article 78 proceeding.   See Matter of Santiago v.
Alexander, 80 A.D.3d 1105 (3d Dep't 2011) (Resp't Ex. Q).
Petitioner applied to the Appellate Division for permission to
appeal to the Court of Appeals (Resp't Ex. R), and Petitioner's
motion was denied on March 25, 2011 (Resp't Ex. S).   Petitioner
then applied directly to the Court of Appeals for leave to appeal,
which was denied on June 28, 2011.   See Santiago, 17 N.Y.3d 705
(2011) (Resp't Ex. V).

## D.   **The Federal Habeas Corpus Petition**

On January 10, 2012, Petitioner filed the instant habeas
petition, wherein he seeks relief on what he has termed a

---

[5]

   While Petitioner's Article 78 proceeding was pending, Petitioner reappeared
before the Parole Board on September 15, 2009, and again parole was denied and
Petitioner was ordered held for an additional 24 months, with Petitioner's next
parole board appearance scheduled for September 2011.   See Resp't Ex. H at Aff.
¶¶ 6-7.

-7-

"constitutional and statutory due process violation" and an "equal protection violation" related to the revocation of his parole. See Pet., Grounds One-Two (Dkt. No. 1). As Petitioner has pled these claims in the instant proceeding, they appear to be the same two claims upon which he sought relief in his Article 78 petition. Respondent filed an Answer and Memorandum in Opposition to the habeas petition on August 17, 2012 (Dkt. Nos. 7, 8), and Petitioner filed a Reply thereto on October 1, 2012 (Dkt. No. 11). At the request of the Court, Respondent submitted supplemental papers addressing the issue of timeliness (Dkt. Nos. 13-15), and Petitioner submitted a supplemental Reply (Dkt. No. 16).

For the reasons stated below, habeas corpus relief is denied and the petition is dismissed.

## III. Venue

By Order dated May 10, 2012, this Court (John T. Curtin, D.J.) instructed Respondent, *inter alia*, to "address whether the Western District of New York is an appropriate and/or most convenient forum for this proceeding." See Order dated 05/10/12 (Dkt. No. 3) at 2-3. Respondent submits that venue is appropriate for the instant proceeding in the Western District, but that venue is also appropriate in the Northern District. See Resp't Mem. of Law at p 12-13.

28 U.S.C. § 2241(d) provides that:

> Where an application for a writ of habeas corpus is made by a person in custody

-8-

under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application. The district court for the district wherein such an application is filed in the exercise of its discretion and in furtherance of justice may transfer the application to the other district court for hearing and determination.

28 U.S.C. § 2241(d).

Because Petitioner was in custody at the Wyoming Correctional Facility, which is located in Wyoming County, at the time he filed his habeas petition, venue is appropriate in the Western District of New York. See 28 U.S.C. § 2241(d); 28 U.S.C. § 112(d). To the extent petitioner seeks to challenge the outcome of the parole proceedings that took place at the Franklin Correctional Facility, which is located in Franklin County, venue would also be proper in the Northern District of New York. See 28 U.S.C. § 112(a); Brooks v. Strack, No. 98-CV-6528 (JG), 1999 U.S. Dist. LEXIS 13199, 1999 WL 672949, at *4-5 (E.D.N.Y. Aug. 25, 1999) (where habeas petition challenged parole hearing procedures, venue was proper where parole hearing took place and where parole decision was made); see also Robinson v. Atkinson, No. 03 Civ. 5176, 2004 WL 1798129, at *4-5 (S.D.N.Y. Aug. 5, 2004).

Although venue is appropriate in both this District and the Northern District, the Court sees no need to transfer the petition to the Northern District. As Respondent points out, the convenience of witnesses is not an issue in this case, nor do the parties dispute that Petitioner's claims were adjudicated on the merits in the state court. See Resp't Mem. of Law at 13. Although, the parties dispute the timeliness of the petition (see discussion, *infra*), the Court is in receipt of the state court records relevant to the instant habeas proceeding and the parties have extensively briefed the issues necessary for this Court to resolve the habeas petition. Thus, the proximity of the judicial forum to Franklin County, the location of the parole proceedings, is not necessary to the adjudication of this petition.

**IV. Timeliness of the Petition**

Respondent asserts untimeliness as an affirmative defense to the petition. See Resp't Mem. of Law, Point I. Petitioner maintains that the petition is timely, arguing that Respondent miscalculated the date the statute of limitations began to run. Petitioner also argues that, even assuming *arguendo* Respondent's calculation is correct, said calculation does not properly take into account tolling. See Pet'r Reply at ¶¶ 5-13. Supplemental papers were submitted by the parties with respect to the issue of timeliness, and the issue is ripe for review. After having

reviewed the parties' submissions, the Court finds that the petition is timely.

**(A) AEDPA's One-Year Statute of Limitations**

A state prisoner may file a § 2254 petition no later than one year from the last of

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

In cases such as this where a habeas petition challenges a decision of the state Parole Board, or challenges an allegedly unauthorized action by DOCS, the applicable start-date is found in 28 U.S.C. § 2244(d)(1)(D), "the date on which the factual predicate of the claim or claims presented could have been discovered through

the exercise of due diligence." Cook v. N.Y. State Div. of Parole, 321 F.3d 274, 280-81 (2d Cir. 2003) (quotations omitted); accord Jenkins v. Farrell, No. 07 Civ. 6937, 2009 WL 1616008, at *2-3 (S.D.N.Y. June 9, 2009) (applying § 2244(d)(1)(D) to habeas claim regarding an alleged unauthorized action by DOCS). The Second Circuit held in Cook that the "factual predicate" for a petitioner challenging a parole revocation "is the revocation of his parole." Id. (finding that "[t]he limitations time therefore did commence at a time set by the statute, when that 'factual predicate [for his] claim . . . could' reasonably have been discovered, i.e., when Cook was notified that the administrative decision to revoke his parole had become final") (ellipsis and alteration in original).

Here, the Division of Parole issued a Notice of Final Declaration of Delinquency on June 1, 2007, stating that Petitioner had been found to be delinquent on his conditions of parole and that his maximum expiration date had been extended. See Resp't Ex. A attaching Ex. J. On October 31, 2007, Petitioner appeared before the Parole Board, and his parole was denied and his next parole board appearance scheduled for November 2009. On November 13, 2007, Petitioner filed a notice of appeal with the Appeals Unit, and timely perfected that appeal on March 13, 2008. See Resp't Ex. A attaching Exs. D, E. The Appeals Unit failed to issue a determination within the four-month time period set forth in

-12-

9 N.Y.C.R.R. § 8006.4[c]. Thus, July 13, 2008 -- four months after the Appeals Unit failed to act on Petitioner's appeal -- was the last possible date on which Petitioner could have been notified that the Parole Board's decision had been affirmed on administrative appeal. Petitioner had one year from that date, or until July 13, 2009, to file his habeas petition.

In opposition to the petition, Respondent submits that the statute of limitations commenced four months after November 13, 2007 (the date Petitioner filed his notice of appeal with the Appeals Unit), or on March 13, 2008. See Resp't Mem. of Law at 18. The Court rejects this argument insofar as 9 N.Y.C.R.R. § 8006.4[c], which governs the determination of administration appeals, provides, in pertinent part, that, "[s]hould the appeals unit fail to issue its findings and recommendation within four months of *the date that the perfected appeal was received,* the appellant may deem this administrative remedy to have been exhausted, and thereupon seek judicial review of the underlying determination from which the appeal was taken." 9 N.Y.C.R.R. § 8006.4[c] (emphasis added). In this case, the perfected appeal was received by the Appeals Unit on March 13, 2008, and the appeal was therefore deemed exhausted four months after that on July 13, 2008 when the Appeals Unit failed to act on the appeal.[6]

---

6

The Court notes that, although Respondent has not alleged so, June 1, 2007 or October 31, 2007, could also be considered as the date when Petitioner was notified that the administrative decision(s) relating to the revocation of his

Turning to Petitioner's argument, he offers a different start date altogether, and maintains that the statute of limitations began to run on June 28, 2011, the date the New York Court of Appeals denied leave to appeal the dismissal of his Article 78 petition.  See Pet'r Reply at p 4-12.  Petitioner reasons that June 28, 2011 is the appropriate start date for the limitations period because the claims raised in the Article 78 petition are "completely unrelated to the parole board's discretionary release appeal of October 2007."  Supplemental Reply at p 3, ¶ 8.  The Court finds Petitioner's argument unavailing and his position curious, given that the record clearly reflects that he challenged the Parole Board's October 31, 2007 determination in his Article 78 proceeding, and given that, as a conceptual matter, a state proceeding brought pursuant to CPLR Section 78 is one which specifically allows plaintiffs in New York to challenge administrative determinations.   See Resp't Ex. A at p 9, ¶ 3.  Accordingly, the Court rejects Petitioner's argument and finds no basis to conclude that the statute of limitations commenced on June 28, 2011.

## (B)  Statutory Tolling

Title 28, Section 2244(d) provides that the limitations period is tolled in "[t]he time during which a properly filed application

parole became final.  Nonetheless, given the complex factual background of this case, the Court gives Petitioner the benefit of the later date, and finds that July 13, 2008, is the appropriate date that the statute of limitations began to run.

-14-

for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. 2244(d)(2); see also Fernandez v. Artuz, 402 F.3d 111, 116 (2d Cir. 2005).

Here, Petitioner filed an Article 78 petition on December 23, 2008, 163 days after the statute of limitations had begun to run on July 13, 2008, which tolled the statute of limitations. See e.g., McPherson v. Burge, No. 9:06 Civ. 1076 (GTS/VEB), 2009 U.S. Dist. LEXIS 126805, 2009 WL 1293342, at *7 (N.D.N.Y. January 27, 2009) (one-year statute of limitations statutorily tolled during pendency of habeas petitioner's filed Article 78 proceeding). In other words, at the time he filed the Article 78 petition, Petitioner had 202 days remaining in the one-year limitations period.

The limitations period was tolled during the pendency of the Article 78 petition, or until June 28, 2011, when the New York court of appeals denied leave to appeal the dismissal of the Article 78 petition. The limitations period then ran for another 196 days, from June 28, 2011, until January 10, 2012, the date of Petitioner's federal habeas petition. Accordingly, because the limitations period ran for an additional 196 days, and Petitioner had 202 days remaining in the limitations period, the habeas petition was timely filed.

Petitioner maintains that, in addition to the Article 78 petition, a motion to vacate, filed on or about November 30, 2007,[7] in Rockland County Court challenging his 2007 conviction also tolled the statute of limitations. See Pet'r Reply at p 11-12; Pet'r Supplemental Reply at p 1-2. Respondent counters, and argues that said motion, which challenged solely Petitioner's underlying conviction in Rockland County for second-degree attempted criminal possession of a forged instrument on the basis that he received ineffective assistance of counsel in conjunction with his guilty plea, did not work to toll the limitations period because it did not challenge the administrative decisions of the Division of Parole revoking Petitioner's parole. See Resp't Supplemental Mem. of Law. The Court agrees.

Section 2244(d)(2) "by its plain language" tolls "the limitations period only for those applications that seek review of part or all of the pertinent judgment." Collins v. Ercole, 667 F.3d 247, 251 (2d Cir. 2012); see also Hodge v. Greiner, 269 F.3d 104, 107 (2d Cir. 2001). Here, the "pertinent judgment" is the Division of Parole's administrative decisions related to the revocation of Petitioner's parole. Petitioner did not directly challenge said decisions in his motion to vacate. Rather, in his motion, Petitioner sought to vacate his 2007 judgment of conviction

---

7

The supplemental records submitted by Respondent (Dkt. No. 15) reflect that the county court denied motion and Petitioner sought leave to appeal, which was denied on August 25, 2008.

on the basis that he received ineffective assistance of counsel
with respect to his guilty plea. In short, Petitioner's motion to
vacate did not constitute an application for review of the
"pertinent judgment" within the meaning of § 2244(d)(2). As
Respondent points out, Collins is instructive on this issue. See
Resp't Supplemental Mem. of Law at 3-4. In Collins, the habeas
petitioner argued that his Article 78 petition -- which asserted
that the DOCS had wrongly determined that his most recent sentence
should run consecutively, rather than concurrently, to a separate
previous sentence -- tolled the AEDPA statute of limitations. See
Collins, 667 F.3d at 250. The Court of Appeals rejected this
argument, finding that the "Petitioner did not challenge any aspect
of his 2001 conviction or sentence. Rather, he argued that DOCS .
. . wrongly determined that his unchallenged 2001 sentence should
run consecutively, rather than concurrently, to a previous
unchallenged sentence imposed pursuant to a separate conviction for
robbery." Id. "An application seeking such relief," the Court
concluded, "is not an application for review of the judgment
itself" within the meaning of § 2254(d)(2). Id. at 251. Here,
Petitioner's motion to vacate challenging his 2007 judgment of
conviction on the basis of ineffective assistance of counsel did
not seek review or reconsideration of the pertinent judgment so as
to toll the statute of limitations under § 2254(d)(2).

The Court now turns to the merits of the petition, and finds that habeas corpus relief is not warranted.

## V. **Exhaustion**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995).

In order to exhaust claims stemming from a denial of parole under New York law, a habeas petitioner must first file an administrative appeal with the Division of Parole's Appeals Unit. Morel v. Thomas, No. 02 CV 9622(HB), 2003 U.S. Dist. LEXIS 10935, 2003 WL 21488017, at *2 n.3 (S.D.N.Y. June 26, 2003) (citing N.Y. Comp. Codes. R. & Regs. tit. 9, § 8006.1). If that appeal is denied, he must seek relief in New York State Supreme Court pursuant to CPLR Article 78. Id. (citing Desire v. New York Division of Parole, 2001 U.S. Dist. LEXIS 13784, at *6 (S.D.N.Y. Aug. 22, 2001)). Assuming his Article 78 petition is denied, the inmate must then appeal the denial to New York's intermediate appellate court, the Appellate Division. See Morel, 2003 U.S. Dist. LEXIS 10935, 2003 WL 21488017, at *2 n. 3 ("Morel did appeal his

denial to the Appeals Unit, and he also filed an appeal in New York Supreme Court pursuant to Article 78.).

Here, Petitioner properly raised his habeas claims in the state courts. Petitioner filed an administrative appeal with the Division of Parole's Appeals Unit, which was timely perfected on March 13, 2008. See Resp't Ex. A at attached D, E. The Appeals Unit did not rule on the appeal, and the appeal was therefore deemed exhausted after four months. See 9 N.Y.C.R.R. § 8006.4[c]. Petitioner filed an Article 78 petition, which was denied. Petitioner then appealed the denial, which was denied. He sought leave to appeal, which was denied by the New York Court of Appeals on June 28, 2011. See Resp't Exs. N, Q, R, S, V. Accordingly, Petitioner's claims are exhausted and are properly before this Court.

## VI. The AEDPA Standard of Review

For federal constitutional claims adjudicated on the merits by a state court, the deferential standard of review codified in the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") applies. A habeas petitioner can only obtain habeas corpus relief by showing that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.

§ 2254(d)(1)-(2).    In this case, Petitioner's claims were
adjudicated on the merits in the state court, and the AEDPA
standard of review therefore applies.    Under that standard,
Petitioner's claims are meritless.

## VII. Analysis of the Petition

### 1.    Due Process Claim

At ground one of the petition, Petitioner claims that he is
entitled to habeas relief on the basis of a "constitutional and
statutory due process violation."    In support of this claim, he
sets forth various arguments all of which revolve around and/or
involve the allegedly improper revocation of his parole.
Specifically, he argues that the process afforded him by the State
of New York did not comport with the requirements of due process
set forth in <u>Morrissey v. Brewer</u>, 408 U.S. 471 (1972), insofar as
he was deprived of a final parole revocation hearing.    <u>See</u> Pet.,
Attach. at 3-5; Pet'r Reply at p 13-33; <u>see</u> <u>also</u> Pet'r Supplemental
Reply.    As discussed below, this claim is meritless.

Initially, to the extent Petitioner's "due process" claim is
based upon and/or derived from perceived violations of state law --
namely particular sections of New York's Executive Law -- the claim
is not cognizable on federal habeas review and is denied on that
basis.    <u>See, e.g.</u>, <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991)
("federal habeas corpus relief does not lie for errors of state
law"); <u>Vasquez v. Walker</u>, 2004 U.S. Dist. LEXIS 4830, 2004 WL

594646, at *4 (S.D.N.Y. Mar. 25, 2004) ("[v]iolations of state statutory rights are not reviewable by federal habeas courts").

Similarly, Petitioner's claim that the State's failure to comply with the two-step process set forth in Morrissey violates his federal due process rights, said claim is also meritless and provides no basis for habeas relief. In Morrissey v. Brewer, 408 U.S. at 482, the Supreme Court held that the requirements of due process apply to the revocation of parole. The Court established two criteria with regard to the process that is due. First, there must be a preliminary hearing "to determine whether there is probable cause or reasonable ground to believe that the arrested. parolee has committed acts that would constitute a violation of parole conditions." Id. at 485. Second, there must be a revocation hearing, if desired by the parolee, that "lead[s] to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation. The parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation." Id. at 488.

In the instant case, Petitioner claims that he was not provided with a final hearing in violation of the second-step of the process set forth in Morrissey. Petitioner, however, was not provided a final hearing because, under New York law, his

-21-

conviction on a new felony charge automatically required revocation of his parole. See Executive Law § 259-i(3)(d)(iii) ("when a parolee . . . has been convicted of a new felony committed while under his present parole . . . and a new indeterminate sentence has been imposed, the board's rules shall provide for a final declaration of delinquency."). Under such circumstances, due process does not require a final hearing. In Alevras v. Neubert, 727 F. Supp. 852 (S.D.N.Y. 1990), the court discussed the import of the Morrissey decision in light of New York's Executive Law provisions. Speaking of the requirements in Morrissey, the court held:

> Those requirements were set forth in the context of parolees suffering revocation based on charges made by their parole officers, and theretofore not established as true by any court or administrative body. In Black v. Romano, 471 U.S. 606, 105 S. Ct. 2254, 85 L. Ed. 2d 636 (1985), . . . the Court stated that Morrissey did not consider the hearing requirements of "a revocation proceeding in which the fact finder was required by law to order incarceration upon finding that the defendant had violated a condition of . . . parole . . . . Thus, the Court's discussion of the importance of the informed exercise of discretion did not amount to a holding that the factfinder in a revocation proceeding must, as a matter of due process, be granted discretion to continue . . . parole.

Alevras, 727 F.Supp. at 853.

Because revocation is based upon a conviction on new felony charges, "the requirements of establishing probable cause and then an actual violation of parole have been satisfied by the

[individual's] convictions. The requirement that [he] have an opportunity to show 'that circumstances in mitigation suggest that the violation does not warrant revocation,' [as set out in Morrissey] has been made unnecessary by the New York State Legislature's determination that revocation should be automatic when the parolee is convicted of a felony while on conditional release." Id. Under these circumstances, there is no need to conduct a final hearing. Keyes v. Juul, 270 F.Supp.2d 327, 329 (E.D.N.Y. 2003) (Where, as here, a parolee is arrested and convicted of a new crime, the need for a final hearing to protect a parolee's due process rights by determining if the parolee has in fact "violated one or more of the conditions of release in an important respect" evaporates because the requirements of due process are satisfied either by the trial underlying the parolee's conviction or waived by his plea of guilty). These statutory provisions have withstood constitutional challenge. See Alevras, 727 F.Supp. at 853 ("[t]here is nothing constitutionally improper in the Legislature's determination."); People ex rel. Maggio v. Casscles, 28 N.Y.2d 415, 418 (1971) ("The conviction of another crime . . . is adequate, in and of itself, to support a revocation, and, in such cases, a new inquiry is hardly necessary."); Pickens v. Butler, 814 F.2d 237, 239 (5th Cir.1987) ("Morrissey did not hold that a state is prohibited from declaring that parole will be automatically revoked for serious violations such as conviction of

a felony.")); People ex rel. Harris v. Sullivan, 74 N.Y.2d 305, 308 (1989)(Under New York Law, a parolee convicted of committing a new felony and sentenced to an indeterminate term of imprisonment is not entitled to a final revocation hearing because they are subject to revocation of parole by operation of law without any hearing.).

In this case, Petitioner's federal due process rights under Morrissey were not violated when the Division of Parole failed to conduct a final parole revocation hearing subsequent to his 2007 conviction. The record clearly demonstrates -- and Petitioner does not dispute -- that he was convicted of a new felony in 2007 and was sentenced to an indeterminate term of 1½ to 3 years imprisonment. The 2007 felony was committed while he was on parole stemming from his 1992 conviction, and his parole was therefore revoked by operation of law. Since Petitioner was therefore not entitled to a final revocation hearing, his claim that his parole was not properly revoked because he never had such a final hearing is necessarily without merit.

Accordingly, Petitioner's claim is meritless and does not warrant habeas relief. It cannot be said therefore that the state court's adjudication of this claim contravened or unreasonably applied clearly established Supreme Court law. The claim is denied in its entirety.

## 2. **Equal Protection Claim**

At ground two of the petition, Petitioner claims that his equal protection rights were violated. Specifically, he claims that New York parolees who are convicted of a new felony in New York (such as himself) do not receive a final parole revocation hearing, while New York parolees who are convicted of a new felony in another state are given a parole revocation hearing to determine whether and for how long they should be returned to prison. See Pet., Attach. at 5-7; Pet'r Reply at p 34-37. As discussed below, this claim is meritless.

As an initial matter, the Court notes that Petitioner frames this claim in the habeas petition as an equal protection violation and expressly refers to it as such in paragraph 33 of his Reply. However, in the section of his Reply entitled "Reply to Respondent's Opposition - Point II" (paragraphs 33-36), he appears to be raising several of the same arguments that he raised in his due process claim, namely, that the State's failure to conduct a final parole revocation hearing violated his constitutional rights under the second-step set forth in Morrissey. To the extent he is raising the same issues/arguments he raised in his due process claim, but has simply "repackaged" them under the guise of an alleged equal protection violation, said issues/arguments have already been addressed (see discussion *supra*) and found to be

meritless. To the extent he is raising a Fourteenth Amendment equal protection claim, that claim is meritless.

Under the Equal Protection Clause of the Fourteenth Amendment, "all persons similarly situated should be treated alike." City of Cleburne, Texas v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). However, "[a] legislature must have substantial latitude to establish classifications that roughly approximate the nature of the problem perceived, that accommodate competing concerns both public and private, and that account for limitations on the practical ability of the State to remedy every ill." Plyler v. Doe, 457 U.S. 202, 216 (1982). "Thus, the Supreme Court has held that - unless the legislature utilizes a classification that is inherently invidious because it disadvantages a suspect class, or because it infringes upon the exercise of a fundamental right - [courts must] exercise only a limited review power over the acts of legislatures." Hayden v. Paterson, 594 F.3d 150, 169 (2d Cir. 2010) (citing Plyler, 457 U.S. at 216-17). "Under this limited review power, [courts] will uphold forms of state action under the Equal Protection Clause so long as the classification at issue bears some rational relationship to a legitimate state interest." Id. (citing Plyler, 457 U.S. at 216). Here, the rational basis standard applies, because Petitioner does not allege purposeful discriminatory treatment based on his membership in a suspect class or an infringement upon the exercise of his fundamental rights.

Thus, the relevant legislation "is presumed to be valid." Cleburne, 473 U.S. at 440.

Petitioner has not rebutted that presumption of rationality. Moreover, in People v. ex rel. Harris v. Sullivan, 74 N.Y.2d 305 (1989), the New York Court of Appeals found a rational basis for the particular parole revocation statute at issue here. The Harris court explained that, "[a]s a general rule, a parolee detained in New York for allegedly violating parole is entitled to a preliminary hearing within 15 days of the execution of the parole warrant (Executive Law § 259-i[3][c][i]) and to a final revocation hearing within 90 days of the preliminary hearing (Executive Law § 259-i[3][f][i])." Harris, 74 N.Y.2d at 308. However, "a parolee convicted of committing a new felony and sentenced to an indeterminate term is not even entitled to a final revocation hearing," but is rather "subject to revocation of parole by operation of law without any hearing." Id. "The dispensation from hearing is the exception from the general requirement and cannot, under its enacted wording, be applicable against parolees subsequently convicted and sentenced from an out-of-State felony. Unlike a parolee convicted for a new felony and serving a new New York indeterminate sentence, the parolee who served a felony sentence outside New York still needs a new release consideration date to be set by the Parole Board by way of the timely final parole revocation hearing procedural mechanism." Id. at 309.

-27-

Indeed, the Harris court explained the legislative basis for this

exception:

> The legislative history of subdivision
> (3)(d)(iii) of Executive Law § 259-i - the
> revocation hearing exemption - confirms that
> the exception was intended to dispense with
> the requirement of a final revocation hearing
> in only the one instance where the hearing
> served no apparent purpose - that is, where
> the parolee has been convicted of a new felony
> and has been sentenced to a new indeterminate
> sentence. In those circumstances, a final
> parole revocation hearing would be a vain
> gesture because no fact finding by the Board
> of Parole would be necessary to ascertain that
> the parolee has in fact violated the
> conditions of his parole. The court of
> conviction and sentence would have already
> indisputably established that reality.
> Additionally, when a parolee is convicted of a
> new New York felony and a new indeterminate
> sentence is imposed, a final parole revocation
> hearing is not needed to fix the parolee's
> reappearance before the Board because the
> violator's reappearance date is automatically
> fixed by law at the time of sentencing for the
> new felony (Penal Law § 70.00[3]; § 70.25[2-
> a]; Executive Law § 259-i[3][d]).

Harris, 74 N.Y.2d at 310.

Given the rational basis of the statute challenged by

Petitioner, the state court's adjudication of this claim was

neither contrary to nor an unreasonable application of clearly

established Supreme Court law. The claim is therefore denied in

its entirety.

## VI. Conclusion

For the reasons stated above, the petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. No. 1) is denied

-28-

and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     January 22, 2013
           Rochester, New York

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

CAPTION:

Santiago
_____ v.

Unger
_____

_____

**CERTIFICATE OF SERVICE**

Docket Number: 13-2216

I, __John Santiago_____, hereby certify under penalty of perjury that on
(name)
June 19, 2013 _____, I served a copy of __Motion Information Statement,__
(date)
Financial Affidavit & Prisoner Authorization (if necessary), Form D-P, Acknowledgment
and notice of Appearance. _____ (list all documents)

by (select all applicable)*

    XX  United States Mail
    ☐  Federal Express
    ☐  Overnight Mail
    ☐  Facsimile
    ☐  E-mail
    ☐  Hand delivery

on the following parties (complete all information and add additional pages as necessary):

Paul B. Lyons, 120 Broadway, New York, N.Y. 10271 (Attorney General).

| Name | Address | City | State | Zip Code |
|------|---------|------|-------|----------|
| Name | Address | City | State | Zip Code |
| Name | Address | City | State | Zip Code |
| Name | Address | City | State | Zip Code |

June 19, 2013
_____
Today's Date

_____
Signature

*If different methods of service have been used on different parties, please indicate on a separate
page, the type of service used for each respective party.

Certificate of Service Form